UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TEIKO LEWIS, an individual doing business as
PENINSULA CLEANERS

        Plaintiff,

    v.

HARTFORD CASUALTY INSURANCE
COMPANY, an Indiana corporation

        Defendants.

No. C 05-2969 MHP

**MEMORANDUM & ORDER**
**Re: Defendant's Motion to Dismiss**

/

    Plaintiff Teiko Lewis filed a complaint and request for declaratory relief in this court, alleging generally that defendant Hartford Casualty Insurance Company ("Hartford") owes plaintiff a duty to defend and indemnify in connection with an administrative claim against plaintiff by the County of San Mateo. Now before the court is defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Having considered the parties' submissions and arguments, the court enters the following memorandum and order.

BACKGROUND

I.    The Underlying San Mateo County Administrative Claim

    Plaintiff operates Peninsula Cleaners, a dry cleaning business. On May 3, 2004 the County of San Mateo Health Services Agency, Public Health and Environmental Protection Division ("the County"), informed plaintiff by letter of her "responsibilities for reporting, investigating, and remediating . . . discharges," or potential discharges, "of waste to waters and/or soil of the State as the result of operations" at Peninsula Cleaners. See Complaint, Exh. A. The discharged "waste"

referred to by the County is perchloroethylene, a chemical used in dry cleaning. See id. ¶ 7. Specifically, the County's letter requires plaintiff to determine the extent of the pollution, to evaluate and implement appropriate remedial action, and to submit detailed quarterly reports to the County beginning thirty days from the date of the letter and until the case is closed. See id., Exh. A. Failure to comply with the County's order carries potential penalties for non-compliance. Id.

II.     The Hartford Insurance Policies

Defendant issued a series of twelve general liability insurance policies to plaintiff, each bearing the number 57 SBA DS 8032. Id. ¶ 15; see also id., Exh. B. The first policy was issued July 24, 1993, and eleven subsequent policies were issued each July 24 up to and including July 24, 2004. Id., Exh. B.

At issue in the instant action are the "Pollution Exclusion" clauses contained in the policies. Although the language of the policies has changed somewhat over the years, each of the policies contains a pollution exclusion identical in all relevant respects to the following clause:

> This insurance does not apply . . .
>
> 1.  to bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:
>
>     a.  at or from premises owned, rented or occupied by the named insured;
>     b.  at or from any site or location used by or for the named insured or others for the handling, storage, disposal, processing or treatment of waste;
>     c.  which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the named insured or any person or organization for whom the named insured may be legally responsible; or
>     d.  at or from any site or location on which the named insured or any contractors or subcontractors working directly or indirectly on behalf of the named insured are performing operations:
>         I.   if the pollutants are brought on or to the site or location in connection with such operations; or
>         ii.  if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.
> 2.  to any loss, cost or expense arising out of any governmental direction or request that the named insured test for, monitor, clean up, remove, contain, treat. [sic] detoxify or neutralize pollutants.

2

> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Id. ¶ 18.

Additionally at issue are the "Right and Duty to Defend" clauses contained in the policies. The parties have agreed that the policies issued between 1994 and 2004 do not trigger the defendant's duty to defend because those policies limit the duty to defend to "suits," and the underlying action is an administrative "claim" against plaintiff, not a suit. The 1993 policy, however, establishes a duty to defend against "any claim or suit."

III.   Tender and Denial of Defense and Indemnification; Filing Suit

Following receipt of the County's letter, plaintiff tendered the defense and indemnity of the County's claim to defendant. On February 17, 2005, defendant declined coverage, finding that "[t]he pollution exclusions contained in the policies preclude coverage." Complaint, Exh. B at 1. Specifically, defendant stated that sections 1(a) and 2 of the pollution exclusion apply and preclude coverage of the County's claim. Id., Exh. B at 3. According to defendant, section 1(a) applies to bar coverage because the discharge, or potential discharge, of perchloroethylene occurred at or from the dry cleaners occupied by plaintiff, and section 2 applies because the County issued "an order requiring Peninsula Cleaners to clean up the site." See id., Exh. B at 10.

On July 21, 2005, plaintiff filed a complaint in this court, seeking declaratory relief as to defendant's duty to defend and duty to indemnify. On September 2, 2005 defendant moved to dismiss for failure to state a claim upon which relief can be granted.

Defendant argues that the pollution exclusion in the policies eliminates any obligation to provide coverage for the underlying claim by the County against plaintiff. Plaintiff, on the other hand, argues that the discharge, or potential discharge, of perchloroethylene is the result of forces beyond plaintiff's control, and that the resulting pollution is not "commonly thought of as environmental pollution." As a result, argues plaintiff, the pollution exclusion does not apply.

3

LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "[o]rdinarily, a court may look only at the face of the complaint to decide a motion to dismiss." Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002). Under Rule 12(b)(6), "unless it appears beyond doubt that plaintiff can prove no set of facts in support of her claim which would entitle her to relief," a motion to dismiss must be denied. Lewis v. Telephone Employees Credit Union, 87 F.3d 1537, 1545 (9th Cir. 1996) (citation omitted); see also Conley v. Gibson, 355 U.S. 41, 45–46 (1957).

DISCUSSION

"A liability insurer owes a broad duty to defend an insured against any claims that create a potential for indemnity." Legarra v. Federated Mut. Ins. Co., 35 Cal. App. 4th 1472, 1479 (1995) (citation omitted). That duty may be limited by the terms of the policy, including any relevant exclusions. See Montrose Chem. Corp. v. Superior Court, 6 Cal. 4th 287, 297 (1993). In a dispute over whether a duty to defend or to indemnify has arisen, in order to prevail the insured "need only show that the underlying claim *may* fall within policy coverage; the insurer must prove that it *cannot*." Id. at 300 (emphasis in original).

Here, defendant must prove that the pollution exclusion in the insurance policies it issued to plaintiff precludes any potential for coverage in connection with the underlying administrative claim against plaintiff.[1] In this diversity of citizenship insurance case, California law applies. See e.g., American States Ins. Co. v. Borbor, 826 F.2d 888, 890 (9th Cir. 1987). The parties each base their arguments on a line of California cases, beginning with the California Supreme Court's decision in MacKinnon v. Truck Insurance Exchange, 31 Cal. 4th 635 (2003).

In MacKinnon, the California Supreme Court considered the interpretation and application of a pollution exclusion which is substantially similar to the exclusion clause at issue in the instant case.

4

1   MacKinnon, 31 Cal. 4th at 639. After a landlord sprayed pesticide to eradicate yellow jackets around
2   an apartment building in an allegedly negligent manner, the landlord faced liability in a wrongful
3   death lawsuit. Id. at 640. The landlord's insurer declined to defend the landlord based on a pollution
4   exclusion that the insurer believed precluded coverage. Id. The California Supreme Court
5   determined that the pollution exclusion should be limited to "injuries arising from events commonly
6   thought of as pollution, i.e. environmental pollution." Id. at 653 (citation omitted). Because the
7   normal application of pesticides would not comport with the common understanding of "pollution"
8   as "something creating impurity, something objectionable and unwanted," the court found that the
9   pollution exclusion did not apply to allegedly negligent use of a pesticide. Id. at 654, 639–40.

    The dispute between the parties in the instant case thus turns on the question of whether the soil and groundwater contamination alleged in the County's letter is "commonly thought of as environmental pollution" or "traditional environmental pollution." Plaintiff offers two reasons why, as a matter of law, the contamination at issue in this case is not traditional environmental pollution. First, plaintiff argues that in order for contamination to be "commonly thought of as environmental pollution" it must be intentional, or it must be an inherent byproduct of an industrial process with no outside force contributing to it. Second, plaintiff argues that "environmental pollution" must be catastrophic. Plaintiff's arguments rest heavily on a passage in MacKinnon observing that the use of several environmental law terms of art in the pollution exclusion "reflects the exclusion's historical objective—avoidance of liability for environmental catastrophes related to intentional industrial pollution." MacKinnon, 31 Cal. 4th at 653 (citing Motorists Mut. Ins. Co. v. RSJ, Inc., 926 S.W. 2d 679, 681 (Ky. App. 1996)). Plaintiff's arguments also rest on distinguishing the facts of the instant case from those of a series of cases cited in MacKinnon as examples of intentional industrial pollution. The court finds plaintiff's reliance on this isolated passage in MacKinnon as well as plaintiff's interpretation of the facts of the cases cited in MacKinnon to be misguided.

    First, pollution need not be intentional or an inherent byproduct of an industrial process with no outside force contributing to it to be "commonly thought of as environmental pollution."[2] A comparison of two cases illustrates that intent is not dispositive of whether something is "commonly

5

thought of as environmental pollution." In MacKinnon, a landlord sprayed an apartment building with pesticides. MacKinnon, 31 Cal. 4th at 640. Although the application of the pesticides—chemicals which under some circumstances could be considered pollutants—was clearly intentional, the court determined that the application of the chemicals was not pollution. Id. at 654. In contrast, in Legarra, a case cited by the MacKinnon court as an example in which the pollution exclusion was properly applied, the owner of the contaminated land argued that the exclusion should not apply because he was unaware of the pollution, which was caused by sources off the property. Legarra, 35 Cal. App. 4th at 1480. The court rejected the notion that the pollution exclusion should apply only to intentional or "active" polluters, and found that so long as the pollution is dispersed "at or from" the insured's property, the exclusion applies regardless of the cause of the pollution, be it "active" or "passive." Id. at 1480–81. Thus, in order for something to be "commonly thought of as pollution," it need not be the result of an intentional act nor be an inherent byproduct of an industrial process with no outside force contributing to it.

Second, pollution need not rise to the level of catastrophe to be "commonly thought of as environmental pollution." In a California Court of Appeal decision following MacKinnon, which the California Supreme Court declined to review, the court found that there need not be an environmental catastrophe or "wholesale environmental degradation, such as occurred at, for example, Love Canal, or the Stringfellow Acid Pits to constitute pollution." Garamendi v. Golden Eagle Ins. Co., 127 Cal. App. 4th 480, 486 (2005). This court agrees.

Given that there is no strict requirement that the conduct giving rise to the pollution be intentional, or that the resulting pollution be catastrophic, the question remains whether the type of contamination at issue here—the discharge, or potential discharge, of perchloroethylene into the soil and groundwater—is "commonly thought of as environmental pollution." The similarities between this case and precedent cases are striking. Among the cases cited with approval in MacKinnon, four of the five cases where a pollution exclusion was held to apply involve groundwater contamination. See Legarra, 35 Cal. App. 4th at 1472 (groundwater contamination from a petroleum plant); Titan Corp. v. Aetna Cas. & Sur. Co., 22 Cal. App. 4th 457 (1994) (groundwater contamination from a

6

manufacturing plant); East Quincy Servs. Dist. v. Continental Ins. Co., 864 F. Supp. 976 (E.D. Cal. 1994) (groundwater contamination from sewage-borne bacteria); Staefa Control-Sys., Inc. v. St. Paul Fire & Marine Ins. Co., 847 F. Supp. 1460, amended by 875 F. Supp. 656 (N.D. Cal. 1994) (Patel, J.) (groundwater contamination from a former manufacturing plant). Here the County in its 2004 letter has directed plaintiff to clean up *soil and groundwater pollution* from perchloroethylene, a chemical used in dry cleaning. See Complaint, Exh. A; id. ¶ 7.

Furthermore, while this court is unaware of any published California case dealing specifically with dry cleaning chemicals such as perchloroethylene, there is at least one case directly on point from an appellate court in Illinois. Illinois insurance law is particularly relevant because Illinois' narrow interpretation of the pollution exclusion clause has been cited favorably by the California Supreme Court. See MacKinnon, 31 Cal. 4th at 642 n.2. In Kim v. State Farm Fire & Casualty Co., the Appellate Court of Illinois considered whether a pollution exclusion applied when the insured dry cleaning company was sued by a property manager for damages resulting from the discharge of the dry cleaning chemical tetrachloroethane into the soil. Kim v. State Farm Fire & Cas. Co., 312 Ill. App. 3d 770, 771–72 (2000). The dry cleaning company asserted, in part, that the pollution exclusion did not apply because the release of the tetrachloroethane was "sudden and accidental," and caused by faulty dry cleaning equipment. Id. at 775, 777. The court found that there was no exception to the pollution exclusion for "sudden and accidental" discharges and that "the absolute pollution exclusion applies to bar coverage, regardless of the cause of the [tetrachloroethane's] release." Id. Likewise, this court finds that the pollution exclusion applies to bar coverage in the instant case, regardless of the cause of the perchloroethylene's discharge.

In summary, the court finds that the discharge, or potential discharge, of perchloroethylene resulting in soil and groundwater pollution at or from plaintiff's dry cleaning operation constitutes pollution "commonly thought of as environmental pollution," precluding insurance coverage under the pollution exclusion clause. Thus, defendant does not owe plaintiff a duty to defend or indemnify in connection with the administrative claim against plaintiff by the County of San Mateo.

CONCLUSION

For the reasons stated above, the court GRANTS defendant's motion to dismiss for failure to state a claim upon which relief can be granted. Plaintiff's complaint is DISMISSED with prejudice.

IT IS SO ORDERED.

Dated: January 30, 2006

MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

# ENDNOTES

1. Defendant also argued that the restriction of Hartford's obligation to defend "suits" found in the policies issued from 1994 through 2004 eliminated any duty to defend or indemnify plaintiff against the County of San Mateo's administrative claim. See Def.'s Motion to Dismiss at 2, 6. Plaintiff agreed with this argument, and conceded that the 1994–2004 policies should be dismissed from the instant claim. See Pl.'s Opposition at 9.

In contrast to the 1994–2004 policies, however, the 1993 policy provides that defendant had a duty to defend and indemnify against "any claim or suit." The issue of whether the duty from the 1993 policy might in some way create a duty for defendant to defend or indemnify plaintiff against the County's 2004 claim, even in spite of the contrasting language in eleven subsequent policies, was not fully briefed or argued by the parties. Thus the court will not reach this issue, but finds that the instant claim may be fully resolved based upon the "absolute pollution exclusion" issue alone.

2. Although it is true that the original 1970 pollution exclusion drafted by the insurance industry expressly made an exception for sudden and accidental acts, the so-called "absolute pollution exclusion" in force today and at issue in the instant case contains no such exception for unintentional acts. See MacKinnon, 31 Cal. 4th at 644 (citing American States Ins. Co. v. Koloms, 177 Ill. 2d 473 (1997)); see also Legarra, 35 Cal. App. 4th at 1480–81 (citing Northern Ins. Co. v. Aardvark Assoc., Inc., 942 F.2d 189, 194 (3d Cir. 1991)).